Filed 09/04/12    Case 12-02553    Doc 1

```
12-02553-A
COMPLAINT
PLAINTIFF: NADEEM AHMAD
DEFENDANT: SHOE PALACE CORPORATION
JUDGE: HON. M. MCMANUS
RELATED CASE: 10-51217

FILED 9/4/12 - 3:37 PM
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION    dPas
```

Nadeem Ahmad
9352 Oreo Ranch Circle
Elk Grove, CA, 95624
Phone:- 916-230-5973
e-mail: nadeemahmad1963@gmail.com

Debtor in Pro Se
Nadeem Ahmad

# UNITED STATES BANKRUPTCY COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No.: No. 10-51217-A-7 |
| Nadeem Ahmad | Adversary Proceeding No. |
|     Plaintiff | **Chapter 7.** |
| vs. | **COMPLAINT FOR:** |
| Shoe Palace Corporation; George Mersho; Ralph Mersho; Agop Mersho; John Mersho; Tony Mersho; Maragret A. Seltzer; and DOES 1-10, | **1. Willful Violation of the Automatic Stay Pursuant to 11 U.S.C §362(h);**<br>**2. Abuse of Process**<br>**3. Intentional Infliction of Emotional Distress**<br>**4. Civil Conspiracy** |
|     Defendants. | **Judge: Hon. Michael S. McManus**<br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiff, Nadeem Ahmad, alleges and states as follows:

## I.

## JURISDICTION

1. This court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

2. This court has personal jurisdiction over the defendants pursuant to Bankruptcy Rule 7004(f).

3. This is a "core" proceeding pursuant 28 U.S.C § 157.

## II.

## PARTIES

4. Plaintiff is an individual and California resident with an address of 9352 Oreo Ranch Circle, Elk Grove, CA 95624

5. Defendant Shoe Palace Corporation is a California Corporation, maintains its corporate head quarters offices at 300 Enzo Drive, San Jose, CA 95138, (herein referred to as "Shoe Palace"). Upon information and believe, Shoe Palace is a family owned business under the ownership and control of the members of the Mersho family.

6. Defendant Margaret A. Seltzer is a licensed California attorney with a California Attorney State Bar Registration Number 87707. Upon information and belief Ms. Seltzer is engaged in private practice of law and maintain offices at 425 California Avenue, 19th Floor, San Francisco, CA 94104. Ms. Seltzer is and has been at all relevant times counsel of record for Shoe Palace Corporation.

7. Defendant George Mersho is the President of defendant Shoe Palace Corporation and, on information and belief, is a resident of Santa Clara County.

8. Defendant Ralph Mersho is an owner of defendant Shoe Palace Corporation and, on information and belief, is a resident of Santa Clara County.

9. Defendant Agop Mersho is an owner of defendant of defendant Shoe Palace Corporation and, on information and belief, is a resident of Santa Clara County.

10. Defendant John Mersho is an owner of defendant of defendant Shoe Palace Corporation and, on information and belief, is a resident of Santa Clara County.

11. Defendant Tony Mersho is an owner of defendant of defendant Shoe Palace Corporation and, on information and belief, is a resident of Santa Clara County.

12. Defendant DOES 1 through 10, inclusive, are sued herein under such factitious names for the reason that the names and capacities of said Defendants are unknown to Plaintiff at this time; that when the true names and capacities of said Defendants are ascertained, Plaintiff will ask leave of Court to amend this Complaint to insert the true names and capacities of said fictitiously named Defendants, together with any additional allegations that may be necessary in regard thereto; that each of said fictitiously named Defendants is in some manner legally responsible for the acts and occurrences hereinafter alleged.

## III.

## FACTUAL BACKGROUND

13. Plaintiff is the sole owner of a California corporation named 2N Design / Build Inc, (herein referred to as "2N"), which was engaged in the business of turn key project solutions, offering architectural and engineering design services, attending plan check meetings with planning, building, fire department officials and other various government departments to secure building permits paving the way to commence complete construction / build out per clients' and the governing building code specifications.

14. During the period of May 2005 and September 2006, 2N, entered into contracts with Shoe Palace to partially design and than carryout complete build out of two retail athletic shoe stores and a remodel of a pad building in a strip shopping center.

15. During early to mid 2006, 2N also did complete design and build out of three additional athletic shoe stores in shopping malls in Salinas, CA and the San Francisco Bay Area.

16. As the above jobs progressed defendant Shoe Palace started to hold back more and more of the funds owed to 2N, while asking 2N to design and build additional upcoming projects. Shoe Palace's repeated attempts at negotiating after the fact during and after the jobs to pay a much lower amount prompted 2N to refuse to do any additional work for Shoe Palace and to place mechanic's liens within the statutory limits after completing the last two projects, totaling more than $270,000, since out of the 6 projects, the last 2 were the only one still with in the statutory limit for placement of mechanic's liens.

17. After delivering all 6 projects ahead of schedule with superior quality and workmanship, 2N demanded payment of outstanding amounts totaling hundreds of thousands of dollars.

18. Shoe Palace refused and arbitration demands were sent and the parties attended a mediation, which was not fruitful. At this time 2N learned that Shoe Palace had replaced their legal counsel with a new attorney; defendant Seltzer.

19. Arbitration demands by 2N were ignored by Shoe Palace and its counsel. As a result, in January of 2007, 2N was forced to file a Complaint in Santa Clara Superior Court alleging Breach Of Contract, Quantum Meruit, and to foreclose on its mechanic's liens on five out of the six jobs completed for Shoe Palace and a similar complaint in San Joaquin Superior Court on the remaining job.

20. Shoe Palace responded by filing a cross complaint naming 2N and its officers, Nadeem Ahamad and his brother, Naseem Ahmad, as cross defendants, alleging causes of action for breach of contract, fraud, and other tort claims.

21. Shoe Palace's refusal to reply to repeated demands to select an arbitrator per the terms of the signed contract to commence arbitration on the four jobs subject to arbitration clauses resulted in 2N filing a motion to compel arbitration. 2N's motion to compel arbitration was granted by Judge Kevin J. Murphy of Santa Clara Superior Court in October, 2007. After months and months of numerous baseless objections and delays by defendant Seltzer and Shoe Palace, an arbitration hearing was held in February 2008. Shoe Palace and Seltzer, however, boycotted the hearing despite the arbitrators making rulings on all of her baseless objection to

-3-
COMPLAINT

him being the arbitrator, and instead filed a motion with the Superior Court to compel arbitration in front of a new arbitrator. After four days of hearings, the arbitrator issued four binding awards in favor of 2N. 2N's counsel negligently failed to confirm the awards and failed to timely oppose Shoe Palace's motion to compel arbitration, which resulted in Judge Murphy ignoring the valid arbitration awards and granting Shoe Palace's motion to compel a second arbitration. At this same hearing a perfectly good mechanic's lien worth $150K was ordered removed by Judge Murphy, despite compelling evidence.

22. Eventually, in October 2010, after more than three years of procedural machinations by Seltzer and numerous problems with the attorneys representing Plaintiff, hearings began on a second arbitration. After two days of hearings, Seltzer had not completed the presentation of her client's case. As a result, the arbitration was to be continued until a later date.

23. In the meantime, the parties were set for trial on November 9, 2010, for the claims which had not been ordered to arbitration.

24. Plaintiff's then-counsel, David Barry, assured Plaintiff that the trial would be continued based on the fact that the arbitrations had not yet been resolved. Barry prepared and filed a motion to continue the November 9, 2010 trial, and, banking on the motion being granted, Barry failed to prepare at all for the trial.

25. When the motion was denied, Barry was shocked. He stated to Plaintiff that he wanted to quit representing 2N and demanded that Plaintiff sign attorney substitution forms to allow him to withdraw from the Santa Clara Superior Court case. Plaintiff refused, knowing that a corporation may not represent itself. In response to Plaintiff's refusal, Barry stated that he would file an "In Camera" motion to have himself removed as counsel of record, promising that if he did, it would damage 2N beyond repair. Plaintiff initially refused. Barry then threatened that he would say in the motion that Plaintiff had lied about certain evidence and that once the judge read the "In Camera" motion, nothing Plaintiff said in court would be believed and Plaintiff's credibility would be completely shot.

26. Upon thorough consideration, Plaintiff decided that in view of Barry's despicable behavior as well as his demonstrated incompetence, Plaintiff no longer wanted Barry to represent 2N or Plaintiff. Accordingly, Plaintiff agreed to sign the attorney substitution forms just before the trial on the morning of November 9, 2010.

27. When the trial started, Barry informed the assigned trial judge, Hon. Patricia Lucas, that he had quit and presented her with the forms Plaintiff had signed. Judge Lucas told Barry that he could not withdraw without another attorney replacing him since a corporation may not represent itself. She commented he would have to continue on as counsel. Barry argued that he should be let off the case but she refused. However, when Judge Lucas asked about letting him continue, Nadeem Ahmad stated that based on Barry's inexcusable behavior, Plaintiff and Naeem Ahmad did not want Barry representing 2N any longer. Judge Lucas then allowed Barry to withdraw and continued the trial until November 29, 2010 to allow 2N and Plaintiff time to find a new attorney. The court also set a November 24, 2010 settlement conference.

28. Plaintiff subsequently began a vigorous search for counsel and spoke to a number of attorneys about representing 2N and Plaintiff at trial. While several were interested in handling the case, they all stated that there was not enough time to prepare for trial and an additional continuance was required. After also talking with several attorneys who specialized in bankruptcy matter, Plaintiff was advised that there was an option of filing for bankruptcy to stay the State Court trial that was only a few days away. Plaintiff was advised that the stay available through the bankruptcy was exactly in place to protect 2N and Plaintiff from being harassed by creditors and by the defendants who would certainly win at trial if 2N and Plaintiff were not represented by an attorney.

30. Before the November 24, 2010, settlement conference, Plaintiff personally made a motion for a continuance and filed a declaration attesting to Plaintiff's vigorous search for an attorney, clearly stating that attorneys were very interested in handling the case, but only if a longer continuance is granted, as it was impossible for any attorney to be ready in 2 weeks for a trial. The motion was denied and the settlement conference was cancelled because 2N did not have an attorney present.

-5-
COMPLAINT

31. At this point, Plaintiff asked if he could have a word with George Mersho, who was present for the conference. George Mersho agreed to talk to Plaintiff without his attorney present. Plaintiff basically pleaded to Mr. Mersho's sense of fair play and told him that even if he won at trial because Plaintiff could not find an attorney in time, Mr. Mersho had no hope of ever collecting a cent from Plaintiff or the Ahmad brothers. Plaintiff asked Mr. Mersho why he was continuing this futile exercise and that he should consider ending the fight by agreeing to an out of court settlement of some sorts. George Mersho's reply was "No, the whole family has discussed this matter, since the whole family is involved with me and Shoe Palace, that we are going to teach Nadeem a lesson for starting this fight with us." Plaintiff told him "that was then and this is now" and why continue to get a judgment that you can never collect on. George Mersho's reply was "the whole family knows that we will never collect on the judgment we are going to get no matter what, but we want to frame it and hang it on our wall". Plaintiff asked him why he was so sure that he would win, he told Plaintiff there is no way Plaintiff will be able to get an attorney and for that and other reasons which he did not want to get into, his win was "guaranteed." Plaintiff told George Mersho that he tried to reason with him and made him an offer, it was worth a shot.

32. With only one business day remaining before trial (with the intervening Thanksgiving holiday) and unable to find an attorney in such a short time and in view of dire financial circumstances of 2N, Plaintiff decided that the only option was to file for bankruptcy protection. On Friday, November 26, 2010, 2N's bankruptcy attorney filed a voluntary chapter 7 bankruptcy petition for 2N with the Bankruptcy Court for the Eastern District Of California in Sacramento, Case No. 2010-51188. Plaintiff also determined to file for personal bankruptcy in view of the looming trial on the cross-complaint and dire personal financial circumstances that were subjecting him to harassment and abuse from creditors and prepared papers for filing on Monday, November 29, 2010

33. Plaintiff was informed of a standby status for the Monday, November 29th, 2010 trial. Both side were asked to come to Department 22 of the old courthouse at the Superior Court and wait until a courtroom became available at the new court house, about 5 miles away in front

of Judge Patricia Lucas. Upon arrival on Monday, November 29, 2010, Plaintiff presented Judge Kevin J. Murphy's clerk the cover sheet of 2N's bankruptcy filing clearly showing the bankruptcy number, the court it was filed at, the bar code and other information. Along with this bankruptcy filing cover sheet for 2N, Plaintiff also handed the clerk a letter that a personal voluntary chapter 7 bankruptcy petition was being filed on Plaintiff's behalf at 9:00 a.m. or shortly thereafter, that same morning and that as soon as the filing cover sheet with the bankruptcy filing number became available Plaintiff would be giving a copy to the judge's courtroom as well as faxing a copy for filing.

34.　　The courtroom clerk took Plaintiff's paperwork to Judge Kevin Murphy's chambers and emerged awhile later to inform the parties that the judge had stayed the trial due to bankruptcy. At this time Plaintiff was asked to give a copy of the papers to the opposing counsel. Right about this time defendant Seltzer entered the courtroom with her client and Plaintiff handed her a copy of the same documents he had given to the courtroom clerk. The clerk then informed defendant Seltzer that Judge Murphy had stayed the trial in view of the bankruptcy filing. Seltzer appeared to be in a state of shock. At this time Plaintiff asked the clerk if he should go to the new courthouse and present the documents to Judge Patricia Lucas as well, she replied with a "not necessary, we will inform every one".

35.　　Plaintiff then went to the clerk's office to formally file the papers. Plaintiff was told he needed a "Notice of Stay of Proceedings" form CM-180 attached before the filing could take place. The clerk at the window indicated that she would take all of Plaintiff's papers and put everyone on notice of the bankruptcy stay including Judge Murphy's courtroom, Department 22. The clerk asked Plaintiff to bring back a copy of the papers with form CM-180 as soon as possible for filing. Plaintiff promised to do so with in the next few days and left the courthouse in San Jose to return home to Elk Grove.

36.　　45 minutes had elapsed since Plaintiff went to the filing window, and as Plaintiff left, he observed defendants Seltzer and George Mersho leaving the old courthouse. Plaintiff did not think much of it at the time, but would learn later why they were leaving just then.

-7-
COMPLAINT

37. On the drive home back to Sacramento, Plaintiff received a call from Judge Murphy's courtroom clerk, Renee. She informed him that Judge Murphy wanted Plaintiff to come back in to see him on Wednesday, December 1, 2010 at 9:00 a.m. Plaintiff commented that the trial had been stayed due to my corporate and personal bankruptcy, was it not? The clerk replied that yes indeed the trial had been stayed, and Plaintiff asked so what does he want me to come in to see him? The clerk stated that the judge only wanted him to come in so he could have an informal discussion with Plaintiff about the bankruptcy filings. Plaintiff said he would be there as requested and that he was planning to come back to San Jose on Tuesday, November 30, to file his "Notice of Stay of Proceedings" on the correct form but now he would come Wednesday, December 1, 2010.

38. When Plaintiff arrived back at the Santa Clara Superior Court on the morning of December 1, 2010, he went directly to meet with Judge Murphy so as not to be late and decided to file his "Notice Of Stay Of Proceedings" after the "informal discussion" with Judge Murphy. When Plaintiff entered the courtroom just before 9:00 a.m., he observed defendants Seltzer and George Mersho in the courtroom with a couple of banker boxes and some binders laid on the defense table. Plaintiff did not think anything of it, figuring that Seltzer was going to be part of the discussion.

39. Seltzer then handed Plaintiff what looked like a copy of a filed motion stamped December 01, 2010, with numerous papers attached to it. At a quick glance, they appeared to Plaintiff to be a write up on some bankruptcy cases.

40. Plaintiff did not believe that documents could be filed directly with the courtroom clerk, but having seen defendant Selterz's filing, Plaintiff approached the clerk and asked her to file his two "Notices of Stay Of Proceedings" since he had not had time to go to the filing window first. The clerk told Plaintiff she could not do it and that he should file them after talking with Judge Murphy who would be out soon.

41. Judge Murphy then entered the courtroom and started asking questions of Seltzer and the Plaintiff. Plaintiff viewed this as the informal discussion for which he had been called by Judge Murphy's clerk. The subject of the corporate and personal bankruptcies was discussed,

-8-
COMPLAINT

and defendant Seltzer began presenting arguments as to why the case was not stayed by either of the bankruptcy filings. Judge Murphy remarked that since the bankruptcy documents handed to him had not been authenticated or there was no certified copy, he did not believe he had in front of him adequate evidence that there was an automatic bankruptcy stay as to the corporation or the Plaintiff. Plaintiff's recommendation that the Judge get his clerk to check on the authenticity of the 2 bankruptcies on PACER were ignored by the judge commenting it was not his job to do so.

42. Defendant Seltzer admitted to Judge Murphy that she had received notice of 2N's bankruptcy filing and was aware that there was an automatic stay as a result. However, Seltzer argued that there were exceptions to the stay which should permit the trial to go forward against 2N's complaint and Shoe Palace's cross-complaint against Plaintiff and his brother, Naeem Ahmad. Seltzer stated to the Court:

> "I WILL SAY THAT WE DID GO AND GET A COPY OF THE PETITION FOR THE CORPORATION. WE DO HAVE A COPY OF THAT. WE HAVE SEEN IT. AND WE, AS I SAID, WE DID THE RESEARCH ON THE ISSUE OF WHETHER THE AUTOMATIC STAY APPLIES TO THE COMPLAINT. AND WE BELIEVE IT'S CLEAR THAT IT DOES NOT. THEREFORE, WE BELIEVE THE COURT, AT A MINIMUM TODAY, CAN DISMISS THE COMPLAINT AND GIVE US A JUDGMENT OF DISMISSAL OF THE COMPLAINT.

At on point Seltzer commented that the personal bankruptcy cover sheet could be a forgery.

43. Judge Murphy ruled there was no stay in force and decided to proceed to trial on 2N's complaint and the cross-complaint. This was while holding in has hands the two bankruptcy filing cover sheets and Plaintiff's two "Notice Of Stay Of Proceedings."

44. Judge Murphy then asked Plaintiff if he was ready to proceed to trial. Plaintiff told the Court that he was not and that there were two automatic bankruptcy stays in effect. In addition, Plaintiff stated that he thought the Court had stayed the case on November 29, 2010, after being informed of 2N's bankruptcy filing and that Plaintiff was told by the courtroom clerk to come in for an informal discussion about the bankruptcy filings and had no idea there was going to be a trial. Judge Murphy ignored these facts and responded only that Plaintiff had

-9-
COMPLAINT

known about the trial for months. Judge Murphy then proceeded to dismiss 2N's complaint for not being represented by counsel and hold essentially a default prove-up on the cross-complaint's claims against Plaintiff and his brother.

45. At that point it became clear to Plaintiff that the reason he had seen defendant Seltzer come out of the courthouse so late on November 29, 2010, was that she must have had an ex-parte communication with Judge Murphy about how to proceed against Plaintiff in light of the bankruptcy filing.

46. Not only did defendant Seltzer convince Judge Murphy to disregard the two bankruptcy stays, but defendant Seltzer also convinced Judge Murphy to granted judgment of the entire amount claimed in the cross-complaint against Plaintiff totaling $1,105,502.75 (One million, one hundred and five thousand, five hundred and two and seventy five cents). This was despite the fact that four out of the six jobs at issue in the cross-claims were still in arbitration, which was in recess due to time running out to complete the evidentiary hearing in October 2010, and then stayed due to 2N's bankruptcy filing.

47. At the end of the trial, Plaintiff went over to George Mersho and sarcastically congratulated him for his win. George Mersho commented to Plaintiff that he had told Plaintiff that he would have his judgment so they could hang it on their wall. Plaintiff left the courthouse shocked and stunned. Plaintiff collapsed in his car with chest pains, seeing stars in broad daylight, and suffering extreme emotional distress. Plaintiff had to wait an extensive period of time before beginning his long drive back home to Elk Grove.

48. After being informed of the results of the trial, 2N's bankruptcy attorney immediately wrote a letter to Seltzer and Judge Murphy, clearly citing the statutes and the willful violation of the bankruptcy stay, strongly protesting that what Defendants had done was a very serious violation and that the decision should be reversed effective immediately. All parties ignored the demand.

49. Plaintiff and his brother filed a motion for reconsideration and a motion to vacate the judgment which were opposed by defendant Shoe Palace. Despite having additional time to consider the Notices of Stays of Proceedings, the arguments fell on deaf ears and Judge Murphy

denied both motions. The motions strongly protested to the unnoticed trial which resulted in violation of the American with Disabilities Act of 1990, since Naeem Ahmad was not given notice of trial and the minimum time granted to persons with disabilities to arrange for reasonable accommodation so he could participate in the proceedings due to his severe hearing impairment, a condition which came up in court several times before, the court being perfectly aware of his condition.

50.     Plaintiff then filed an appeal with the 6th District Court of Appeals. The Court of Appeals, unlike the Superior Court, recognized the significance of the automatic stays triggered by the bankruptcy filings and stayed the appeal.

## VI.

## FIRST CLAIM FOR RELIEF

**(Against all Defendants for willfully violating the Automatic Stay)**

51.     Plaintiff re-alleges paragraphs 1 – 50 as though fully set forth herein.

52.     Pursuant to 11 U.S.C. Sec. 362(a)(4) and (5) the filing of plaintiffs' bankruptcy petition on November 29, 2010, operated as a stay, applicable to defendants, enjoining defendants from engaging in the December 1, 2010, unnoticed ambush trial.

53.     Defendants willfully violated 11 U.S.C. Sec 362(a)4) and / or (5) by engaging in acts to obtain a civil monetary judgment with full knowledge of the plaintiffs' bankruptcy filing, and with full knowledge that they enjoyed by federal law from engaging in the acts complained of.

54.     Even after being advised in writing by plaintiffs' bankruptcy attorney on December 7, 2010, that they had and were willfully violating the automatic stay, after receiving a written demand to vacate the judgment that was obtained in violation of the automatic stay, the defendants, and their licensed attorney refused and continued to refuse to vacate the judgment in question and therefore, continued to willfully violate the automatic stay to this day.

55. Defendants' willful violation continued when defendant Shoe Palace, through defendant Seltzer, vigorously defended a motion for reconsideration and a motion to vacate judgment obtained in willful violation of the automatic stay.

56. Defendants' conduct in willfully violating the automatic stay, which violation is ongoing, has caused plaintiff to incur severe emotional damages as well as actual monetary damages in an amount to be proven at trail.

58. Defendants' conduct in creating a judgment in question was willful, wanton and malicious. An award of punitive damages against defendants is accordingly appropriate pursuant to 11 U.S.C. §362(h) and / or C.R.S. §13-12-102.

## SECOND CLAIM FOR RELIEF

**(Against all Defendants for Abuse of Process)**

59. Plaintiff re-alleges paragraphs 1 – 58 as though fully set forth herein.

60. Defendants, and each of them, have abused the legal process in a wrongful manner, not proper in the regular conduct of the proceedings in 2N Design/Build, Inc. v. Shoe Palace Corporation, et al., Superior Court for the County of Santa Clara, Case No. 1-07-077539, by willfully obtaining a judgment on Shoe Palace's cross-complaint in violation of the automatic stay of Plaintiff's personal bankruptcy.

61. Defendants intentionally used this legal procedure to humiliate Plaintiff and get vengeance on Plaintiff and "teach him a lesson" for having dared file a complaint to recover the sums owed to Plaintiff.

62. Plaintiff has suffered damage, loss, and harm, including but not limited to his reputation and his emotional well-being.

63. Each of the Defendant's conduct was a substantial factor in causing Plaintiff's harm.

64. Defendants did the things herein alleged maliciously and to oppress Plaintiff. Plaintiff is therefore entitled to exemplary or punitive damages.

-12-
COMPLAINT

## THIRD CLAIM FOR RELIEF

### (Against all Defendants for Intentional Infliction of Emotional Distress)

65. Plaintiff re-alleges paragraphs 1 – 64 as though fully set forth herein.

66. Defendants, and each of them, have abused the legal process in a wrongful manner, not proper in the regular conduct of the proceedings in 2N Design/Build, Inc. v. Shoe Palace Corporation, et al., Superior Court for the County of Santa Clara, Case No. 1-07-077539, and willfully obtaining a $1.1 million judgment against Plaintiff personally on Shoe Palace's cross-complaint in violation of the automatic stay of Plaintiff's personal bankruptcy.

67. Defendants, as admitted by defendant George Mersho, intentionally pursued this judgment in violation of the automatic stay to humiliate Plaintiff and get vengeance on Plaintiff to "teach him a lesson" for having dared file a complaint to recover the sums owed to Plaintiff.

68. Defendants' conduct was extreme and outrageous and done with the intention of causing or reckless disregard to the probability of causing Plaintiff to suffer humiliation, mental anguish, and emotional distress.

69. As a proximate result of Defendants acts alleged herein, Plaintiff has suffered severe emotional distress, entitling him to damages in an amount to be proven at trial.

70. Plaintiff has suffered heart attacks and has been hospitalized due to heart trouble brought upon by the emotional distress from Defendants' actions.

71. Each of the Defendant's conduct was a substantial factor in causing Plaintiff's harm.

72. Defendants did the things herein alleged maliciously and to oppress Plaintiff. Plaintiff is therefore entitled to exemplary or punitive damages

## FOURTH CLAIM FOR RELIEF

### (Against all Defendants for Civil Conspiracy)

73. Plaintiff re-alleges paragraphs 1 – 72 as though fully set forth herein.

74. On or about November 30, 2010, Defendants and each of them knowingly and willfully conspired and agreed among themselves to obtain a $1.1 million judgment against Plaintiff personally in 2N Design/Build, Inc. v. Shoe Palace Corporation, et al., Superior Court

for the County of Santa Clara, Case No. 1-07-077539, in violation of the automatic stay of Plaintiff's personal bankruptcy.

75. Defendants Shoe Palace, George Mersho and Seltzer and each of them did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and above-alleged agreement.

76. Defendants Ralph Mersho, Agop Mersho, John Mersho, and Tony Mersho, furthered the conspiracy by cooperation with, lent aid and encouragement to, and ratified and adopted the acts of Defendants Shoe Palace, George Mersho and Seltzer.

77. As a proximate result of the wrongful acts herein alleged, Plaintiff has been damaged in an amount to be proved at trial.

78. Defendants did the things herein alleged maliciously and to oppress Plaintiff. Plaintiff is therefore entitled to exemplary or punitive damages.

## V.
## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks the following relief from the defendants, jointly and severally:

1. For general and compensatory damages according to proof, including but not limited to damages from emotional distress;

2. For punitive and exemplary damages in an amount calculated to punish and deter defendants and to make them an example for other;

3. For plaintiff's reasonable attorney's fees and costs in prosecuting this action;

4. For prejudgment interest from the date of the violation of the automatic stay, and for post judgment interest until any judgment is entered against defendants is fully satisfied;

5. For an order vacating the judgment entered in violation of the automatic stay; and

6. For such further and additional relief as the Court deems proper and just.

Dated: September 4, 2012

By: _____
Nadeem Ahmad, Debtor in Pro Per

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all of the causes of action herein.

Dated: August 31, 2012      By: _____
Nadeem Ahmad, Debtor in Pro Per

-15-
COMPLAINT